IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAURUS BLOSSOM,<br><br>                Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>and DR. VIPIN SHAH,<br><br>                Defendants. | Case No. 3:22-CV-361-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc. ("Wexford") and Dr. Vipin Shah. (Doc. 50). Plaintiff Taurus Blossom does not oppose the dismissal of Wexford but argues that disputed questions of material fact preclude the grant of summary judgment to Defendant Dr. Shah. (Doc. 52).

## BACKGROUND

In 2005, Plaintiff Taurus Blossom was 31 years old when injuries from a motorcycle accident required the amputation of his right leg above the knee and the fitting of a prosthetic leg. (Doc. 52-1 at pp. 9-10). As a result of his prosthesis, Blossom experienced constant, 10 out of 10 pain when walking, and lesser, 7 out of 10 pain when sitting or resting. (*Id.* at pp. 12-14). Blossom's doctors prescribed him a number of pain medications over the years, from Vicodin and Norco when he first lost his leg, to Tramadol a few years later. (*Id.* at p. 18). For a number of years, Blossom took Tramadol 50 mg twice a day for

his right leg pain. (*Id.* at pp. 18-20). In 2018, Blossom entered the Illinois Department of Corrections, where he again was prescribed Tramadol for his pain. (*Id.* at pp. 20-23).

In January 2020, Wexford Health Sources, Inc., the contracted health care provider for IDOC facilities, advised its personnel of a "national manufacturer backorder on Tramadol 50 mg tablets." (Doc. 51-2). The memo, dated January 21, 2020, advised providers that no resolution date had been issued and that "pharmacy wholesalers are expecting the situation to be longer term." (*Id.*). The memo also stated that Wexford's pharmacy, Boswell, "is unable to obtain any more Tramadol at this time. They have a limited supply remaining on hand, which they expect to exhaust before the week is over." (*Id.*). Wexford personnel were advised to re-evaluate their patients' chronic pain management needs and, as necessary, consider available Tramadol substitutes such as Tylenol #3. (*Id.*). Wexford personnel were not prohibited from prescribing Tramadol or Tramadol-equivalent substitutes to the extent the medications were available. (*Id.*).

Defendant Dr. Vipin Shah saw Blossom on January 30, 2020, for left knee pain due to a fall. (Doc. 51-3 at p. 3). The progress note for Blossom's visit with Dr. Shah states, on the first line, "M.D. Line: tramadol shortage." (Doc. 51-4). In the subjective portion of the note, Dr. Shah wrote that Blossom fell and reported left knee pain. (*Id.*; Doc. 51-3 at p. 5). Dr. Shah observed that Blossom's vital signs were normal, and he examined Blossom's left knee, which revealed normal movement without swelling. (*Id.* at p. 4). Dr. Shah discontinued Blossom's Tramadol prescription but gave him a knee sleeve and prescribed Tylenol 500 mg twice a day as needed for his left knee pain. (*Id.* at pp. 2-3). Dr. Shah did not prescribe anything further for Blossom's right leg, amputation-related

pain, because Blossom was already taking Nortriptyline 50 mg, a 24-hour medication for neuropathic pain, on a nightly basis. (*Id.* at pp. 3, 5). Dr. Shah testified that he could not prescribe Tramadol on January 30, 2020, because of the Tramadol shortage and because "it was not needed" for Blossom's left knee pain. (Doc. 52-2 at pp. 14-15, 23). Dr. Shah explained that Tylenol was an alternative medication that would address both Blossom's left knee pain from his fall and his right leg musculoskeletal issue from his amputation. (*Id.* at pp. 25-26). Dr. Shah did not recall whether he explained the reason for discontinuing Tramadol to Blossom during his visit. (Doc. 51-3 at p. 6).

When the nurse first gave Blossom the Tylenol, Blossom asked for Tramadol because he was in a lot of pain. (Doc. 52-1 at p. 38). The nurse told him he "ain't getting it anymore" and that he would need to put in a slip to see Dr. Shah. (*Id.*). Blossom testified that saw Dr. Shah and asked, "what happened to me getting my Tramadol?" (*Id.*). Dr. Shah told him "Well, we're not going to pay for it. It's too expensive. If you want it, you buy it." (*Id.* at pp. 38-39). Blossom further testified that when he asked Dr. Shah for something stronger than Tylenol, Dr. Shah told him, "You going to get that for now, Tylenol." (*Id.* at p. 40). However, there is no record of that visit. Blossom was discharged from prison in March 2020. (Doc. 52-1 at p. 6).

Blossom never filed any grievances that mentioned Tramadol, nor was he aware of any policy prohibiting Tramadol from being prescribed to inmates. (Doc. 51-1 at pp. 2-3). Blossom also was not prescribed Tramadol by his outside providers after being released from IDOC custody; instead, he was given naproxen. (Doc. 52-1 at pp. 58-59).

Blossom initiated this lawsuit on February 25, 2022, alleging that Wexford had a

policy of prohibiting its physicians from prescribing Tramadol even when it met the standard of care, amounting to deliberate indifference and causing harm to Blossom and "other similarly situated inmates at Robinson Correctional Center in and around February 2020." (Doc. 1). Blossom further alleged that Dr. Shah did not use medical judgment in substituting Tylenol for Tramadol, but simply followed the orders of his employer, which constitutes deliberate indifference in violation of the Eighth Amendment. (*Id.*). Blossom abandoned his class action claims in April 2024. (Doc. 47).

Defendants now move for summary judgment on Blossom's claims. (Doc. 50). As mentioned above, Blossom does not contest the dismissal of Defendant Wexford, so the only remaining issue is whether Defendant Dr. Shah is entitled to judgment as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the

burden of proof." *Celotex*, 477 U.S. at 323.

## DISCUSSION

"The Eighth Amendment proscribes 'deliberate indifference to serious medical needs of prisoners' amounting to 'the unnecessary and wanton infliction of pain.'" *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 678–79 (7th Cir. 2023) (quoting *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022)). "Deliberate indifference requires '[s]omething more than negligence or even malpractice.'" *Id.* at 679 (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). "Proving deliberate indifference can be difficult in situations where a medical professional has provided at least some treatment in response to a plaintiff's complaints." *Id.* A plaintiff must show the physician's decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* (citing *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019)).

Defendants assert that summary judgment should be granted in Dr. Shah's favor because Blossom failed to produce evidence demonstrating that Dr. Shah was deliberately indifferent. Defendants do not dispute, for the purposes of summary judgment, that Blossom had a serious medical condition. They argue, however, that Blossom has not presented enough evidence for a reasonable jury to conclude that Dr. Shah was deliberately indifferent in treating Blossom's medical condition and that his inadequate care caused Blossom harm. Defendants contend that Dr. Shah's decisions related to Blossom's prescription medications were based on his professional judgment, and there is no evidence to the contrary. To the extent that Blossom requested a stronger

pain medication, Defendants argue, an inmate's mere disagreement with the course of his medical treatment does not support a constitutional violation.

In response, Blossom points to Dr. Shah's inability to explain, in his deposition, why he discontinued Blossom's Tramadol prescription. Blossom notes that Dr. Shah did not have any independent recollection of treating him or prescribing any medication for him. Dr. Shah also was unable to refresh his recollection by looking at the medical records, stating that he would have to "depend on the chart." (Doc. 52-2 at p. 8). Blossom further argues that there is a question of fact regarding whether Dr. Shah told him that Tramadol was "too expensive" and he would have to buy it himself. Blossom asserts that this is not a case about his preference for one medication over another, but rather about replacing an effective medication with an ineffective substitute because the original medication was too expensive. Furthermore, he argues, a jury should decide Dr. Shah's credibility in claiming the Tramadol was discontinued for a reason other than cost, when Dr. Shah cannot independently recall anything about his treatment of Blossom.

Defendants, in reply, note that Dr. Shah was timely disclosed as a Rule 26(a)(2)(C) non-retained expert. (Doc. 53-1). And while non-retained experts are limited to testifying about opinions formed during their involvement in the relevant events of the case, there is no requirement that non-retained experts have "perfect recall of these facts on which they rely to offer those opinions." *Ezell v. City of Chicago*, No. 18 C 1049, 2023 WL 5287919, at *36 (N.D. Ill. Aug. 16, 2023). Here, as a medical doctor directly involved in Blossom's treatment, Dr. Shah could—and did—testify about Blossom's treatment based on his and other providers' notes from Blossom's medical chart. Additionally, Dr. Shah testified that

he created most of the notes for the visit on January 30, 2020, and that he reviewed and relied on the chart before any visit with Blossom. (Doc. 51-3 at pp. 4-6, 8).

The Court agrees with Defendants that Dr. Shah was properly disclosed and testified as a Rule 26(a)(2)(C) non-retained expert regarding Blossom's medical records and the treatment he received. The fact that Dr. Shah relied on the medical chart to refresh his memory regarding the opinions he formed, four years earlier, during his treatment of Blossom is entirely proper under Federal Rule of Evidence 612.

The Court further agrees with Defendants that no reasonable jury would find Dr. Shah was deliberately indifferent to Blossom's pain. Upon his review of the chart, Dr. Shah testified that he saw Blossom in January 2020 for left knee pain due to a fall, that Blossom's vital signs were normal, and that he prescribed a knee sleeve and Tylenol 500 to be taken twice a day. Dr. Shah also testified, based on his refreshed recollection, that he changed Blossom's medication from Tramadol to Tylenol due to the nationwide Tramadol shortage, the fact that Blossom was also on Nortriptyline for his amputation-related neuropathic right leg pain, the fact that Blossom's left knee examination was normal, and because Blossom did not "state any serious degree of [] pain." (Doc. 52-2 at pp. 14-15, 18).

The Seventh Circuit has held that the Eighth Amendment prohibition on inflicting unnecessary and wanton pain requires doctors who know that an incarcerated patient is suffering to take "reasonable measures" to alleviate that pain. *Arce*, 75 F.4th at 681. "But the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients

completely pain-free." *Id.* (internal citations omitted). Here, even if a jury were to accept that Dr. Shah told Blossom "we aren't going to pay for [Tramadol]," the overwhelming evidence demonstrates that there was a Tramadol shortage, Blossom was on a prescription medication for nerve pain in his amputated leg, and Dr. Shah believed that Tylenol would help with the pain in both of Blossom's legs. Blossom has failed to show that Dr. Shah's decision was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* Indeed, after Blossom was released from prison, his outside providers continued him on an over-the-counter pain medication. Accordingly, the Court finds that Dr. Shah is entitled to summary judgment.

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc., and Dr. Vipin Shah (Doc. 50) is **GRANTED**.

Plaintiff Taurus Blossom shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: August 15, 2025

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**